UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARY JURY,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 3:19-cv-12617
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12) and AFFIRM THE COMMISSIONER'S DECISION**

**I. RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment

(ECF No. 12), and **AFFIRM** the Commissioner's decision.

**II. REPORT**

        Plaintiff Cary Jury brings this action under 42 U.S.C. § 405(g) for review of

a final decision of the Commissioner of Social Security (Commissioner) denying

his application for Disability Insurance (DI) benefits.  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (ECF No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 12), and the administrative record (ECF No. 6).

### A.   Background and Administrative History

#### 1.   Prior claims

As stated in Plaintiff's disability report, he was previously denied DI benefits in 2013 and 2014.  (R. at 287-288.)

#### 2.   Current claim and appeal

Plaintiff alleges his disability began on February 3, 2015,[1] at the age of 49. (R. at 286.)  He filed an application for disability insurance benefits (DIB) on January 18, 2016.  (R. at 111.)[2]  In his disability report, he lists hypertension, slow digestive motility, diverticulosis, gastroparesis, and high cholesterol as limiting his ability to work.  (R. at 291.)  His application was denied on June 23, 2016. (R. at 98-110.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at 143-144.)  On March 23, 2018, ALJ Virginia Herring held a hearing, at which Plaintiff and a vocational expert (VE), Cheryl Mosley, testified.  (R. at 55-97.)  On

---

[1] Plaintiff initially alleged that his disability began on January 1, 2011 (R. at 260), but subsequently amended that date to February 3, 2015 (R. at 286).

[2] Plaintiff also filed an application for Supplemental Security Income (SSI) in January 2016 (R. at 263-268), which is not the subject of this appeal.

2

August 18, 2018, ALJ Herring issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8-26.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 247-250.) However, on July 8, 2019, the Appeals Council denied Plaintiff's request for review. (R. at 1-7)

Plaintiff timely commenced the instant action on September 6, 2019.

### B. Plaintiff's Medical History

The administrative record contains approximately 403 pages of medical records, which were available to the ALJ at the time of her August 28, 2018 decision. (R. at 368-771 [Exhibits 1F-15F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from February 3, 2015, the alleged onset date, through his date last insured (DLI) of December 31, 2015. (R. at 13.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (lumbar and cervical spine), osteoarthritis (right hip), gastroparesis/GERD/diverticulosis, and obesity. (R. at 13-15.) At **Step 3**, the ALJ found that through the DLI, Plaintiff did not have an impairment or combination of

3

impairments that met or medically equaled the severity of one of the listed impairments. (R. at 15-16.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[3] and determined that Plaintiff had the RFC:

> to perform light work . . . except no more than occasional climbing (stairs and ramps), kneeling, crouching, or crawling; no climbing of ladders, ropes, or scaffolds; balancing and stooping is limited to frequent; the claimant must avoid workplace hazards such as dangerous machinery and unprotected heights; and the claimant is limited to simple and routine tasks due to symptoms from physical health issues.

(R. at 16-19.) At **Step 4**, the ALJ determined that through the date last insured, Plaintiff was able to perform past relevant work as a gas station cashier. (R. at 20-21.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ alternatively determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as nut and bolt assembler and inspector. (R. at 20-21.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from February 3, 2015, the alleged onset date, through December 31, 2015, the date last insured. (R. at 21.)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

4

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff alleges that the ALJ failed to create an accurate RFC that includes all of his limitations and, thus, erroneously found work at Steps 4 and 5,[4] because she: (1) did not consider the objective evidence relating to his gastroparesis symptomatology or the type, dosage, effectiveness, and side effects of his

---

[4] Plaintiff frames his summary judgment motion as a challenge to the ALJ's Step Four and Five determinations (ECF No. 10, PageID.813), but he is actually challenging the RFC determination. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

prescription medications; and (2) "did not include in her RFC or hypothetical questions to the VE anything regarding bathroom proximity in the workpla[c]e." (ECF No. 10, PageID.813-819.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's RFC assessment, and that he "has not produced any competent medical evidence to support a more restrictive RFC, as was his burden." (ECF No. 12, PageID.836-849.)  I will address each argument in turn.

### 1. RFC Determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.

7

App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations). In assessing RFC, the adjudicators must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

    **2.    The Court should conclude that the ALJ's RFC determination is supported by substantial evidence**

Plaintiff asserts generally that the ALJ's RFC determination is not supported by substantial evidence because it fails to include the entirety of his documented limitations. For the reasons that follow, I disagree.

Plaintiff does not dispute that he was last insured as of December 31, 2015. Thus, as the ALJ concluded (R. at 11), Plaintiff had to establish that he was under a disability within the meaning of the SSA in the ten month period between February 3, 2015, his alleged onset date, and December 31, 2015, his date last insured. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status.") (citing 42 U.S.C. § 423(a) and (c)).

As Plaintiff himself did in his testimony at the hearing and does now on appeal, the ALJ largely focused on Plaintiff's gastrointestinal issues when formulating his RFC. (R. at 17.)[5] Ultimately, the ALJ found: "The record evidence shows the claimant clearly has medically determinable gastrointestinal impairments with symptomatology therefrom. However, the same evidence . . . does not support the chronicity and frequency of such symptoms as testified." (R.

---

[5] Specifically, the ALJ stated: "It is clear from the claimant's testimony that he alleges disability primarily due to his gastrointestinal/stomach symptoms. Accordingly, the undersigned finds it appropriate to focus more attention on these symptoms." (R. at 17.)

9

at 18.) An examination of the record reveals that substantial evidence supports this finding as well as the RFC assessment itself.

The ALJ acknowledged (R. at 17) Plaintiff's testimony at the March 2018 hearing, over two years from Plaintiff's DLI, of chronic and severe stomach pain with episodes of vomiting and diarrhea, and bowel movements several times a day for four or five days each week (R. at 69-73). However, as the ALJ reasoned, this testimony is inconsistent with the objective medical records documenting Plaintiff's report of symptoms during or near the relevant time period. For example, notes from Plaintiff's March 26, 2015 physical indicate that he reported no gastrointestinal symptoms such as abdominal pain, diarrhea, nausea, or vomiting. (R. at 17-18 (citing R. at 541 [Exhibit 9F].) The notes also state: "The patient feels well with no complaints, has good energy level and is sleeping well. Nutrition: balanced diet. Patient exercises 3-4 times per week. Patient sleeps 6 hours per night. The patient's libido is normal." (R. at 540 [Exhibit 9F].)

On July 8, 2015, at an appointment with Digestive Health Associates for "GERD, Nausea/Vomiting, Barrett's Esophagus and Colon Polyps," Plaintiff reported having issues with nausea and vomiting once a month, but that he had not had any episodes of that nature for two months. (R. at 589 [Exhibit 9F].) On the basis of this evidence, it was not unreasonable for the ALJ to find that "[w]hile this note is partially consistent with the claimant's testimony, it does not reflect the

extreme chronic nature of the claimant's testimony during the relevant period at issue." (R. at 18.) And medical records from the rest of 2015 and into 2016 support the same conclusion.

An August 20, 2015 note from Plaintiff's appointment at Digestive Health for abdominal pain, nausea, and vomiting indicates that Plaintiff reported only occasional diarrhea and difficulty with evacuation, and that he had not had vomiting episodes during the previous two months. (R. at 587 [Exhibit 9F].) At a December 21, 2015 medical appointment, Plaintiff presented with a moderate two-week stomachache (R. at 575 [Exhibit 9F]) and was experiencing abdominal pain, gas, heartburn, indigestion, and nausea, but denied any diarrhea or vomiting (R. at 576 [Exhibit 9F]). And, finally, as the ALJ found (R. at 18), although a January 12, 2016 treatment note provides that Plaintiff complained of a gradual four-month onset of abdominal pain (R. at 572 [Exhibit 9F]), it further states that Plaintiff's symptoms did not include nausea, vomiting, or diarrhea (R. at 572-573 [Exhibit 9F]).

Given all of this, the ALJ's observation that the objective medical evidence during the relevant time period was inconsistent with Plaintiff's testimony regarding the chronicity and severity of his gastrointestinal impairments (R. at 17-18), and resultant finding that through the DLI, Plaintiff could perform light work with certain additional limitations (R. at 16) were based on "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip*, 25 F.3d at 286). Accordingly, the Court should find that substantial evidence supports the ALJ's RFC determination.

In support of his argument that the ALJ failed to consider the objective medical evidence relating to his gastrointestinal issues to assess his RFC, Plaintiff generally references his diagnoses of gastroparesis, IBS, and colon polyps, and his reports of nausea, vomiting, and diarrhea. (ECF No. 10, PageID.815 (citing R. at 69-72, 394, 396, 398, 401-402, 405 [Exhibit 4F], 531-533 [Exhibit 8F]).) But diagnoses alone say nothing of the severity of a claimant's symptoms or any resulting functional limitations. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Nor is an ALJ required to blindly accept a claimant's testimony regarding his symptoms. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). The ALJ has the responsibility of assessing credibility, *Rogers*, 486 F.3d at 247, and the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ[,]" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Further, it is clearly inaccurate to assert that the ALJ did not consider the objective evidence relating to Plaintiff's

symptomology of his gastroparesis in assessing the RFC. (ECF No. 10, PageID.815.) As discussed at great length above, the ALJ addressed both the objective medical evidence related to those conditions, as well as Plaintiff's testimony regarding his associated symptoms, but simply concluded that, *at least during the relevant time period*, the reported intensity and severity of those symptoms was unsubstantiated by Plaintiff's medical records. (R. at 17-18.)

It bears noting that much of the evidence Plaintiff cites in support of his argument is from outside the relevant time period and, therefore, not terribly probative of his medical condition on or before the DLI. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (evidence of a claimant's medical condition after the DLI may be considered only to the extent that it offers insight into the claimant's condition on or before the DLI) (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), and *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013)). For example, Plaintiff cites heavily to his hearing testimony, which occurred over two years after his DLI (ECF No. 10, PageID.815), and medical records from April and July 2016 (ECF No. 10, PageID.815-816 (citing R. at 531-533 [Exhibit 8F])).

Plaintiff's assertion that the ALJ erred by failing to discuss the results of specific tests he underwent in February 2015 (ECF No. 10, PageID.815-816 (citing R. at 408, 410, 412 [Exhibit 4F]) is equally unconvincing. An ALJ need only

13

*consider*, not *discuss*, all of the evidence in the record, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006), and, as the Commissioner asserts (ECF No. 12, PageID.841), S.S.R. 06-03p, cited by Plaintiff (ECF No. 10, PageID.816), does not mandate otherwise, S.S.R. 06-03p, 2006 WL 2329939.[6] Thus, Plaintiff's assertion that the ALJ did not consider the evidence as a whole because she did not discuss the results of his February 2015 colonoscopy, EGD, and gastric study lacks merit and should be rejected by the Court.

Further, Plaintiff's mere recitation of his gastrointestinal diagnoses and medical records which support his claim do not, in and of themselves, establish that he suffered from functional limitations beyond those the ALJ included in her RFC determination. *See Jordan*, 548 F.3d at 423 (the plaintiff bears the burden of proving a lack of RFC); *see also Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") (quotation marks and citation omitted). Nor does Plaintiff point to any evidence in the record identifying such limitations, or argue that the ALJ "played doctor" to formulate his RFC.[7] *See Gross v. Comm'r of Soc. Sec.*, 247

---

[6] S.S.R. 06-03p was rescinded effective March 27, 2017, but was in effect at the time Plaintiff filed his claim.

[7] "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to

14

F.Supp.3d 824, 828 (E.D. Mich. 2017) ("[T]here is significant case law in this district confirming the general principle that the ALJ must generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]") (quotation marks and citations omitted).[8] Regardless, the ALJ created a logical bridge between the evidence and the result by comparing Plaintiff's testimony regarding the severity of his symptoms and impairments to the objective medical evidence from the relevant time period, and reconciling the obvious inconsistencies, as described in depth above. *See Gross*, 247 F.Supp.3d at 829-30 ("[T]his Court may not uphold an ALJ's decision, even if there is enough evidence to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.") (quotation marks and citations omitted). Accordingly, the Court should reject Plaintiff's argument (ECF No. 10, PageID.814-815) that the RFC assessment

---

mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)) (citation omitted).

[8] The medical opinion before the ALJ, which she considered and afforded great weight (R. at 19), was a mental health assessment, and therefore not pertinent to the issues Plaintiff has raised here. And though Plaintiff presented to the Appeals Council opinion letters from three medical providers (*see* R. at 1-2, 48-54), the Appeals Council declined to consider those opinions, and Plaintiff does not argue that the Court should now consider them.

falls short of including the entirety of his documented limitations in violation of S.S.R. 85-15.

### 3. Prescription medication

Plaintiff next argues that "the RFC evaluation is flawed because the ALJ failed to properly discuss [his] prescribed medications," citing to medical records from May, July, and October 2015, which he asserts demonstrate that various medication dosages were increased due to ineffectiveness. (ECF No. 10, PageID.817-818 (citing R. at 394, 398, 403 [Exhibit 4F], 590 [Exhibit 9F].) But he fails to provide any explanation regarding the medical condition for which each medication was prescribed, let alone identify any additional limitations that necessitated the need for or were caused by the increased dosages, both of which are fatal to his arguments. Moreover, a review of her opinion reveals that the ALJ did in fact consider Plaintiff's prescription medication to evaluate his symptoms in accordance with 20 C.F.R. § 404.1529(c)(3)(iv) and accounted for this in the RFC. Specifically, the ALJ reasoned:

> [T]hough the claimant testified to some medication side effects of drowsiness, the relevant records do not indicate any significant medication side effects of drowsiness (the claimant denied fatigue at 9F/2). Nonetheless, the residual functional capacity, as noted, limits the claimant to simple and routine tasks whereby he would not be exposed to certain workplace hazards.

(R. at 19.) And Plaintiff has offered the Court nothing to justify rejecting this conclusion.

### 4. Bathroom limitation

Finally, the Court should reject Plaintiff's argument that the ALJ erred by failing to include in her RFC or hypothetical questions to the VE bathroom proximity in the workplace. (ECF No. 10, PageID.818.) Again, as explained above, substantial evidence supports the ALJ's RFC determination and finding that Plaintiff's testimony regarding the severity of his gastrointestinal symptoms, including vomiting and diarrhea which require the use of and proximity to a restroom, are inconsistent with the objective medical evidence during the relevant time period. (R. at 17-18.) Further, this argument appears to be based largely on Plaintiff's testimony at the hearing regarding bouts of diarrhea and vomiting (R. at 69-73, 78), but the ALJ found Plaintiff's testimony regarding his symptoms less than credible (R. at 17-18), and the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ[,]" *Reynolds*, 424 F. App'x at 414.

### F. Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 12), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 21, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE